MASTER LEASE AGREEMENT

THIS MASTER LEASE AGREEMENT (the "Lease") is made and entered into as of the 24th day of April, 2003, by and between BOSTIC DEVELOPMENT AT LYNCHBURG, LLC, a North Carolina limited liability company ("Landlord"); and LIBERTY UNIVERSITY, INC., a Virginia nonstock corporation, (collectively, "Tenant").

## WITNESSETH:

THAT, WHEREAS, Landlord is the fee simple owner of approximately 22 acres of real property located on Candlers Mountain Road in or near the boundary line separating the City of Lynchburg and the County of Campbell in the Commonwealth of Virginia (the "Property") and more particularly shown on the preliminary plans attached hereto as Exhibit A (the "Plans");

WHEREAS, Landlord is in the process of constructing a 266 unit apartment community, together with recreational amenities, on the Property substantially in accordance with the Plans (the "Community") (each separate apartment unit shown thereon is hereafter referred to as a "Unit" and each free standing building containing Units shown thereon is hereafter referred to as a "Building"), and the Work Letter attached hereto as Exhibit E (the "Work Letter");

WHEREAS, Tenant desires to lease from Landlord and Landlord desires to lease to Tenant, the Property and the Community, for a period of 40 years for use in connection with Tenant's nearby university, Liberty University, all upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises, the mutual promises hereinafter set forth, the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord leases and rents to Tenant and Tenant hereby leases and rents from Landlord, the Premises more particularly described below in accordance with the following terms and conditions:

1. **Premises:**

A. The "Premises" shall mean and collectively refer to the Property and the Community and the appliances (the "Appliances") more particularly described on Exhibit B attached hereto. Pursuant to the terms of the Work Letter, Landlord shall, at its sole cost, construct, improve, and complete with due diligence and continuity the Premises in phases (each a "Phase"), in accordance with the construction schedule attached hereto as Exhibit C (the "Construction Schedule").

B. (i) Landlord shall deliver the first six (6) Buildings (containing 84 Units) together with the amenities related thereto ("Phase One") on the following schedule:

**EXHIBIT**

1

I:\W\CDLIB\JFRANK\0887954.08
FINAL

| Building | Delivery Date (days after site grading commences) |
|---|---|
| 1 | 147 days |
| 2 | 157 days |
| 3 | 167 days |
| 4 | 177 days |
| 5 | 187 days |
| 6 | 197 days |

The 197th day after March 27, 2003 (the date Landlord commenced site grading) shall be the "Phase One Delivery Date".

(ii) Landlord shall deliver 182 Units (or the remainder of the Units in the Community if less than 182) together with the amenities related thereto ("Phase Two") on August 10, 2004 (the "Phase Two Delivery Date"); provided, however, Tenant shall have the right to postpone the delivery of 84 Units in Phase Two, together with the amenities related thereto ("Phase Three") until August 10, 2005 (the "Phase Three Delivery Date") upon payment to Landlord of the amount of $180,500 (the "Delay Fee") no later than September 30, 2003.

(iii) The Units contained within each Phase and the amenities related thereto are more particularly shown and outlined on the Plans attached hereto as Exhibit A.

C. On or before May 15, 2003, Landlord and Tenant will review the construction schedule and actual construction progress to date, and will in good faith assess the number of Units that Landlord will likely complete and deliver to Tenant by the Phase One Delivery Date. If the parties reasonably determine that Landlord will complete and deliver to Tenant more than the number of Units comprising Phase One, then Landlord and Tenant will execute and deliver an amendment to this Lease modifying the number of Units comprising Phase One, Phase Two and Phase Three, if necessary. In such event, the liquidated damages provided in Paragraph 2(B) of this Lease shall apply to the revised number of Units comprising Phase One, Phase Two and Phase Three, if necessary.

2. Term:

A. The term of this Lease (the "Term") shall be for forty (40) years, commencing on the date (the "Commencement Date") that one or more of the Phase One Units are Substantially Complete (as defined in the Work Letter) and delivered to Tenant (as evidenced by delivery to Tenant of the keys to such Unit); provided, however, unless the parties otherwise agree in writing, the Commencement Date shall occur no earlier than August 17, 2003. On the Commencement Date, and on the date subsequent Units are Substantially Complete and delivered to Tenant, Tenant shall become liable for the payment of monthly rental per Unit (as set forth in Paragraph 3 below) whether or not Tenant actually takes possession of the Units. The taking of possession of one or more Units by Tenant shall be conclusive evidence that Tenant accepts such Unit(s) and that the same are in good condition at the time possession is taken except

for items that are Landlord's responsibility under Paragraphs 6(A) and 19(B) hereof and any Punch List Items (as hereinafter defined). When the Commencement Date has been determined as provided in this paragraph, Landlord and Tenant shall execute, acknowledge and deliver to each other a written statement confirming the Commencement Date, and as each subsequent Phase is delivered, Landlord and Tenant shall execute, acknowledge and deliver to each other a written statement confirming the number of Units added to the Premises.

B. (i) If, for any reason other than Tenant Delays and Excusable Delays, Landlord does not Substantially Complete and deliver to Tenant the Buildings comprising Phase One on the dates set forth in Paragraph 1(B)(i) above, then in such event Landlord shall pay to Tenant as liquidated damages the amount of One Thousand Five Hundred Dollars ($1,500.00) per Building for each day that delivery is delayed beyond the dates set forth above. Conversely, if Landlord Substantially Completes and delivers to Tenant the Buildings comprising Phase One prior to the dates set forth in Paragraph 1(B)(i) above, then Tenant shall pay to Landlord a success fee of Seven Hundred Fifty Dollars ($750.00) per Building for each day that delivery occurs after August 15, 2003 but prior to the dates set forth above.

(ii) If Landlord fails to deliver all of the Buildings comprising Phase Two on the Phase Two Delivery Date, for any reason other than Tenant Delays and Excusable Delays, then Landlord shall pay to Tenant as liquidated damages the amount of One Thousand Five Hundred Dollars ($1,500.00) per day for each incomplete Building until it is Substantially Complete and delivered to Tenant. In the event Tenant pays the Delay Fee and Landlord fails to deliver all of the Buildings comprising Phase Three to Tenant on the Phase Three Delivery Date, for any reason other than Tenant Delays and Excusable Delays, then Landlord shall pay to Tenant as liquidated damages the amount of One Thousand Five Hundred Dollars ($1,500.00) per day for each incomplete Building until it is Substantially Complete and delivered to Tenant. Notwithstanding anything contained herein to the contrary, in no event shall Tenant be required to accept delivery of the Buildings comprising Phase Two sooner than August 1, 2004, and, if applicable, in no event shall Tenant be required to accept delivery of the Buildings comprising Phase Three sooner than August 1, 2005.

(iii) Landlord and Tenant acknowledge and agree that Landlord's liability to pay liquidated damages under Paragraphs 2(B)(i) and (ii) above shall not exceed Four Hundred Thousand Dollars ($400,000) in the aggregate. Landlord hereby irrevocably waives any right to contest the amount or reasonableness of such liquidated damages payments, and Tenant agrees that the foregoing sums represent the agreed upon liquidated damages for Tenant. Tenant may deduct liquidated damages as described herein from any unpaid amounts then or thereafter due Landlord under this Lease. Any liquidated damages not so deducted from any unpaid amounts due Landlord shall be payable to the Tenant at the demand of Tenant. Any success fee shall be due and payable to Landlord at the demand of Landlord. If the provisions of this Paragraph 2(B) shall apply, then Landlord agrees that the amenities relating to a particular Phase will be finished and operational when Landlord completes and delivers to Tenant the final Building(s) included within that particular Phase of development.

C. For purposes of this Lease, a "Lease Year" shall be defined as that twelve (12) month period commencing on the Commencement Date or the annual anniversary thereof, as may be applicable; provided, however, that if the Commencement Date is a day other than the first day of a calendar month, then the first Lease Year shall include that period of time from the Commencement Date up to the first day of the next calendar month, and any subsequent Lease Year shall be the twelve (12) month period beginning on the first day of such month. For purposes of this Lease, a "Lease Month" shall be defined as those successive calendar month periods beginning with the Commencement Date and continuing through the term of this Lease; provided, however, if the Commencement Date is a day other than the first day of a calendar month, then the first Lease Month shall include that period of time from the Commencement Date up to the first day of the next calendar month; and each subsequent Lease Month shall be a calendar month period beginning on the first day of such month.

3. **Rent:** Tenant shall pay, without notice or demand and without any deduction or setoff whatsoever (except as otherwise expressly provided), to Landlord or as Landlord directs, monthly rental payments, in advance, beginning on the Commencement Date and continuing thereafter on the first (1st) day of each Lease Month during the Term hereof, in the amount of Seven Hundred Ninety Five Dollars ($795.00) per Unit that is Substantially Complete and delivered to Tenant. Rent shall be paid in immediately available funds by wire or as Landlord otherwise directs. The monthly rental set forth herein shall increase by one percent (1%) per annum as of the first day of the third (3rd) Lease Year, by two percent (2%) per annum as of the first day of the fourth (4th) Lease Year, and by two percent (2%) per annum as of the first day of each subsequent Lease Year thereafter. If the Term does not begin on the first day or end on the last day of a month, the Rent for that partial month shall be prorated by multiplying the monthly Rent by a fraction, the numerator of which is the number of days of the partial month included in the Term and the denominator of which is the total number of days in the full calendar month.

4. **Late Payment Fees and Interest:** If any rental payment is not received by midnight on the tenth (10th) day after it is due, Tenant shall pay a late payment fee of five percent (5%) of said late payment amount. This late payment fee shall be due immediately without demand and shall be added to and paid with the late rental payment. Furthermore, all late rental payments, including the fee therefor, shall accrue interest at the rate of ten percent (10%) per annum.

5. **General Tenant Obligations:** Tenant shall:

(i) not use or allow the use of the Premises for any unlawful or immoral purposes or occupy them in such a way as to constitute a nuisance;

(ii) keep the Premises, including all plumbing, electrical and HVAC fixtures, facilities and appliances, in a clean and safe condition (provided that Landlord shall be required to maintain and repair certain portions of the Premises in accordance with the provisions of Paragraph 6(B) hereof);

(iii) not cause or allow any unsafe or unsanitary condition in the Premises;

(iv) comply (and require subtenants and other occupants to comply) with all obligations imposed upon tenants by applicable law;

(v) use and maintain in a proper and reasonable manner the Premises, including all plumbing, electrical and HVAC fixtures, facilities and appliances;

(vi) not deliberately or negligently (or allow others to deliberately or negligently) destroy, deface, damage or remove any part of the Premises, including fixtures, facilities and appliances;

(vii) be responsible for and liable to Landlord for all damage to, defacement of, or removal of property from the Premises whatever the cause;

(viii) permit Landlord (and Landlord hereby reserves the right to) to enter the Premises during reasonable hours, upon reasonable advance notice to Tenant, for inspecting the Premises and at any time in the event of an emergency which makes such entry appropriate;

(ix) conduct itself and require all other persons on the Premises with its consent to conduct themselves in a reasonable manner and so as not to disturb other tenants' peaceful enjoyment of the Premises;

(x) not abandon or vacate the Premises during the term hereof;

(xi) enforce the rules of Liberty University as if the Premises were on-campus housing; and

(xii) not create or allow to be created, any liens, claims or encumbrances on the Premises or any portion thereof.

6. <u>Maintenance and Repair Obligations</u>:

A. Except as otherwise provided in Paragraph 6(B) below, throughout the Term of this Lease, Tenant shall, at Tenant's sole cost and expense, keep the Premises and all improvements in good order, condition and repair, and consistent with the other buildings and facilities comprising the Liberty University campus.

B. Landlord, at its expense and without reimbursement or contribution by Tenant, shall be responsible for the maintenance, repair and replacement, as necessary, of those portions of the Building consisting of (i) the roof, roof membrane, roof covering (including interior ceiling if damaged by leakage), load-bearing walls and floor slabs, masonry walls and foundations, and (ii) those items of Landlord's Work warranted under Paragraph 19(B) hereof. Landlord's repairs or replacements required under this paragraph shall be made within a reasonable time (depending

I:\WMCDLIB\FRANK\0887954.08
FINAL

5

Case 6:05-cv-00013-NKM  Document 1-1  Filed 04/29/05  Page 5 of 13  Pageid#: 10

on the nature of the repair or replacement needed) after receiving notice from Tenant or having actual knowledge of the need for a repair or replacement. If such repairs or replacements are not completed within thirty (30) days after Landlord has received written notice from Tenant or if such repairs or replacements cannot reasonably be completed within such thirty (30) day period and Landlord shall fail to commence such repairs or replacements within thirty (30) days after notice and proceed diligently thereafter then Tenant may prosecute such repairs or replacements. Notwithstanding the foregoing, in the case of an emergency (such as, without limitation, a leaky roof) which: (A) poses the threat of imminent damage to Tenant or the Building occupants or to the property of Tenant or the Building occupants; and (B) necessitates prompt maintenance, repair, or replacement of items which are otherwise required by this Lease to be maintained, repaired, or replaced by Landlord, then Tenant may at its option proceed forthwith to make repairs if (1) it is unable to notify Landlord of such emergency condition after using diligent efforts to contact Landlord and advise it of same, or (2) Landlord fails to make immediate repairs after being notified of the emergency condition. In such event, Tenant shall proceed to make repairs or replacements to the extent necessary to eliminate such threat of imminent damage to person or property, and promptly thereafter Landlord shall make permanent repairs or replacements necessary to fully eliminate the problem. If Tenant undertakes any of Landlord's repair and replacement obligations, Landlord shall reimburse Tenant within ten (10) days after Tenant's demand for reimbursement, together with copies of invoices or other documentation evidencing Tenant's reasonable costs.

7. **Rules and Regulations**: Tenant, its subtenants, guests, agents and invitees shall comply with rules and regulations which shall be no less stringent than the rules and regulations set forth in Tenant's student handbooks and other publications, including The Liberty Way, in effect as of the Commencement Date (the "Rules and Regulations"). No changes to the Rules and Regulations shall become effective unless approved by Landlord and Tenant.

8. **Pets**: Tenant shall not keep or harbor in or about the Premises any animals or pets of any kind, including but not limited to dogs, cats, birds and marine animals, except as necessary as an accommodation to a disabled resident as required by the Virginians with Disabilities Act, the Americans with Disabilities Act, the regulations promulgated thereunder, and other applicable laws or regulations.

9. **Alterations**: Tenant shall not paint or decorate the Premises or make any alterations, additions or improvements in or to the Premises without Landlord's prior written consent, which consent shall not be unreasonably conditioned, withheld or delayed, and then only in a workmanlike manner using materials and contractors reasonably approved by Landlord. All such work shall be done at Tenant's expense and at such times and in such manner as Landlord may reasonably approve in writing. Except as otherwise provided in Paragraph 6(B) above, Tenant shall not have the right, except with Landlord's prior written consent which consent Landlord may withhold in its sole discretion, to make any alterations to the roof, roof membrane, roof covering, load-bearing walls and floor slabs, masonry walls and foundations of the Premises. All alterations, additions and improvements upon the Premises, made by either Landlord or Tenant, shall become the property of Landlord and shall remain upon and become a part of the Premises at the end of the tenancy hereby created.

10. **Use:** Tenant shall not allow or permit the Premises to be used for other than residential purposes by students, employees, subtenants and assigns of Tenant.

11. **Tenant's Duties Upon Termination:** Upon any termination of the tenancy created hereby, whether by Landlord or Tenant and whether for breach or otherwise, Tenant shall: (a) pay all utility bills due for services to the Premises for which it is responsible and have all such utility services discontinued; (b) vacate the Premises removing therefrom all of Tenant's personal property and subtenants and their personal property; (c) properly sweep and clean the Premises, including the Furniture and Appliances, removing therefrom all rubbish, trash, garbage and refuse; (d) make such repairs and perform such other acts as are necessary to return the Premises, including the Furniture and Appliances or fixtures, in the same condition as when Tenant took possession of the Premises (ordinary wear and tear and casualty excepted); (e) fasten and lock all doors and windows; and (f) return to Landlord all keys to the Premises. If Tenant fails to sweep out and clean the Premises, Appliances and fixtures as herein provided, Tenant shall become liable, without notice or demand, to Landlord for all reasonable and necessary cleaning fees incurred by Landlord.

12. **Tenant's Default:**

A. The occurrence of any of the following shall constitute an "Event of Default" by Tenant under this Lease:

(i) Any failure by Tenant to pay rent or make any other payment required to be made by Tenant hereunder within ten (10) days after Tenant's receipt of written notice from Landlord (provided written notice shall not be required to be given more than two times in any Lease Year).

(ii) A failure by Tenant to observe and perform any other provision of this Lease to be observed or performed by Tenant, where such failure continues for thirty (30) days after Tenant's receipt of written notice thereof from Landlord, except that this thirty (30) day period shall be extended for a reasonable period of time if such default is not reasonably capable of cure within said thirty (30) day period and Tenant proceeds to diligently cure such failure.

(iii) Tenant files (or has filed against it) any petition or action for relief under any creditor's law (including bankruptcy, reorganization or similar actions), either in state or federal court and such petition or action is not vacated or stayed within thirty (30) days thereafter.

(iv) Tenant becomes insolvent, makes any transfer in fraud of creditors, has a receiver appointed for its assets, or makes an assignment for benefit of creditors.

B. Upon the occurrence of an Event of Default, in addition to any other lawful right or remedy which it may have, Landlord without notice, may do any one or more of the

following: (i) with or without terminating this Lease or being liable for any damages, whether caused by the negligence of the Landlord or otherwise, may immediately or at any time thereafter reenter the Premises and correct or repair any condition which shall constitute a failure on Tenant's part to keep or perform or abide by any term, condition, covenant or agreement of this Lease or of the Rules and Regulations now in effect or hereafter adopted, and Tenant shall reimburse and compensate Landlord, as additional rent, within fifteen (15) days of rendition of any statement to Tenant by Landlord, for any expenditures made by Landlord in making such corrections or repairs; (ii) seize and hold any personal property of Tenant located in the Premises and assert against the same a lien for monies due Landlord; (iii) terminate the Lease; or (iv) repossess the Premises by lawful means, and with or without terminating, relet the same at such amount as Landlord deems reasonable, and if the amount is less than Tenant's rent, Tenant shall immediately pay the difference on demand to Landlord, but if in excess of Tenant's rent, the entire amount shall belong to Landlord free of any claim of Tenant thereof. All reasonable expenses of Landlord in repairing, restoring or altering the Premises for reletting, together with leasing fees and all other reasonable expenses in seeking and obtaining a new tenant, shall be charged to and a liability of Tenant. Landlord's reasonable attorney's fees actually incurred in pursuing any of the foregoing remedies, or in collecting any rents due by Tenant hereunder shall be paid by Tenant. Landlord may apply the security deposit, if any, at anytime to amounts owed by Tenant under this Lease. Landlord shall mitigate its damage by making reasonable efforts to relet the Premises on reasonable terms. Tenant further agrees that Landlord may obtain an order for summary ejectment from any court of competent jurisdiction without prejudice to Landlord's rights to otherwise collect rents from Tenant.

C. Without limiting the foregoing, in the case of an Event of Default under Paragraph 12(A)(i) above, Landlord may, after establishing a Rental Value acceptable to Landlord in its sole discretion, terminate this Lease and recover forthwith from Tenant, as damages for loss of the bargain and not as a penalty, an aggregate sum which, at the time of such termination of this Lease, represents the excess, if any, of (a) the aggregate of the rent payable by Tenant hereunder that would have accrued for the balance of the Term, over (b) the aggregate rental value of the Premises for the balance of the Term (the "Rental Value"), both discounted to present worth at a rate that is equal to the prime lending rate charged by Bank of America, a national banking association or such other national banking association located in Lynchburg, Virginia, as selected by Landlord and Tenant.

For purposes of establishing damages under this Paragraph 12(C), the Rental Value of the Premises shall be determined by appraisal within thirty (30) days after such Event of Default has occurred. Each party shall identify its appraiser retained to make such determination, which appraiser must be engaged full time as a real estate appraiser in the Commonwealth of Virginia and must be a member of the American Institute of Real Estate Appraisers ("MAI"). A copy of such appraiser's report indicating the Rental Value shall be delivered, upon receipt, to the other party. If the appraised Rental Value of the Premises according to such two (2) appraisal reports vary by twenty five (25%) percent or less, then the Rental Values indicated in the two (2) reports shall be averaged and the value thus obtained, shall, for all purposes, conclusively be the Rental Value. If such values vary by more than twenty five (25%) percent then such two (2) appraisers shall select a third appraiser, similarly qualified, who shall determine the Rental Value of the

Premises, such determination to be conclusive on the parties. If the two (2) appraisers fail to appoint such third appraiser within thirty (30) days after delivery of the second appraiser's report, the third appraiser shall be appointed by the presiding judge of the state court of general jurisdiction for the county in which the Premises are located, and such third appraiser shall then individually determine the Rental Value of the Premises, such determination to be binding upon each of the parties. It is expressly agreed that the determination of the Rental Value of the Premises by a third appraiser (whether appointed by the prior two (2) appraisers or such presiding judge) shall be a value that must be between the values determined by the results of the prior two (2) appraisers, and the submission of the dispute to such third appraiser shall so provide. Each party shall pay all costs, fees and expenses of the appraiser appointed by it, and fifty (50%) percent of the costs, fees and expenses of the third appraiser, if any.

The Rental Value shall assume that the Premises will continue to be used for student housing; provided, however, if the Premises can no longer be used as student housing because of changed circumstances, then the Rental Value shall be based upon the Premises being used as multi-family apartments. The determination of the Rental Value of the Premises shall based upon actual physical and economic factors existing at that time, including the length of time necessary to fully lease the Premises. Each appraiser shall use standard MAI methods and techniques in arriving at the Rental Value of the Premises.

If Landlord, in its sole discretion, does not agree with the determination of Rental Value, then in lieu of the damages remedy provided in this Paragraph 12(C), Landlord may elect to pursue any of the other rights and remedies of Landlord under this Lease, at law or in equity.

D. All rights and remedies of Landlord hereunder are cumulative and shall be in addition to all rights and remedies otherwise available to Landlord at law or in -equity, and the exercise of any one shall not be an election excluding Landlord at any other time from exercise of a different or inconsistent remedy. No exercise by Landlord of any right or remedy granted herein shall constitute or effect a termination of this Lease unless Landlord shall so elect by written notice delivered to Tenant. No waiver by Landlord of any covenant or condition shall be deemed to imply or constitute a further waiver of the same at a later time, and acceptance of rent by Landlord, even with knowledge of a default by Tenant, shall not constitute a waiver of such default.

13. **Landlord's Default; Limitation of Remedies and Damages:** Until Tenant notifies Landlord in writing of an alleged default and affords Landlord a reasonable time within which to cure (not to exceed thirty (30) days), no default by Landlord in the performance of any of the promises or obligations herein (a "Landlord Default") shall constitute a breach of this Lease and Tenant shall have no right to terminate this Lease for any such Landlord Default or suspend its performance hereunder. In the case of a Landlord Default that cannot with due diligence be cured by Landlord within thirty (30) days, Landlord shall be not be deemed to be in default unless Landlord fails to commence such cure promptly within such thirty (30) day period and thereafter diligently prosecute such cure to completion within a reasonable period of time. Damages due to a Landlord Default are limited to Landlord's interest in the Premises, and any applicable insurance proceeds and condemnation awards that are not applied to the restoration of

the Premises or any Building as required by the terms of this Lease.

14. **Utilities:** Tenant shall be solely responsible for all water, sewer, cable and/or satellite television, internet service, electricity and any other desired utility used at the Premises.

15. **Compliance with Laws.** Except as provided below, during the Term, Tenant shall comply with all applicable laws, ordinances, rules, and regulations of governmental authorities ("Applicable Laws") regarding the use, operation, maintenance and repair of the Premises by Tenant. During the Term, Landlord shall comply with all Applicable Laws regarding those portions of the Premises that are Landlord's responsibility under Paragraphs 6(B) and 19 hereof.

16. **Insurance; Release and Indemnity Provisions:**

A. Throughout the Term of this Lease, Tenant at its sole cost and expense shall keep or cause to be kept for the mutual benefit of Landlord and Tenant, contractual and comprehensive general liability insurance, including public liability and property damage, with a minimum combined single limit of liability of Three Million Dollars ($3,000,000.00) and excess liability coverage with limits of Twenty Million Dollars ($20,000,000) for personal injuries or deaths of persons occurring in or about the Premises. Tenant shall keep its personal property (including the Furniture and Appliances) and trade fixtures in the Premises insured with "all risks" insurance in an amount to cover one hundred (100) percent of the replacement cost of the property and fixtures. Tenant also shall keep the Premises insured against damage and destruction by fire, earthquake, vandalism, and other perils in the amount of the full replacement value of the Premises, as the value may exist from time to time. The insurance shall include an extended coverage endorsement of the kind normally required by institutional lenders.

B. Prior to taking possession of the Premises, and thereafter at least ten (10) business days prior to the beginning of each Lease Year, Tenant shall deliver to Landlord copies of original policies, or satisfactory certificates thereof, a receipt showing payment of the next year's premium. All such policies shall be non-assessable and shall contain language, to the extent obtainable, that: (a) any loss shall be payable notwithstanding any act or negligence of Landlord or Tenant that might otherwise result in forfeiture of the insurance, (b) that the policies are primary and non-contributing with any insurance that Landlord may carry, and (c) that the policies cannot be cancelled or changed except after thirty (30) days prior written notice to Landlord.

C. Anything in this Lease to the contrary notwithstanding, Landlord hereby releases and waives unto Tenant (including all stockholders, officers, directors, employees and agents thereof), its successors and assigns, and Tenant hereby releases and waives unto Landlord (including all members, stockholders, officers, directors, employees and agents thereof), its successors and assigns, all rights to claim damages for any injury, loss, cost or damage to persons or to the Premises or any other casualty, as long as the amount of which injury, loss, cost or damage has been paid either to Landlord, Tenant, or any other person, firm or corporation, under the terms of any fire, extended coverage, public liability or other policy of insurance, to the

Case 6:05-cv-00013-NKM   Document 1-1   Filed 04/29/05   Page 10 of 13   Pageid#: 15

extent such releases or waivers are permitted under applicable law. All policies of insurance carried or maintained pursuant to this Lease shall contain, or be endorsed to contain, a provision whereby the insurer waives all rights of subrogation against either Tenant or Landlord.

D. The amounts of insurance coverage required by this Lease are subject to review at the end of every three (3) Lease Years following the Commencement Date. At each review, if necessary to maintain the same level of coverage that existed on the commencement date, the amounts of coverage shall be increased to equal the amounts of coverage carried by prudent operators of comparable property in the City of Lynchburg, Virginia area.

E. Insurance policies required by this Lease shall: (a) be issued by insurance companies licensed to do business in the Commonwealth of Virginia with general policyholder's ratings of at least "A" and a financial rating of at least "VI" in the most current *Best's* *Insurance Reports* available on the Commencement Date (if the *Best's* ratings are changed or discontinued, the parties shall agree to an equivalent method of rating insurance companies); (b) name Landlord, Landlord's managing agent and Landlord's mortgagee as additional insureds as their interest may appear; (c) provide that the insurance not be cancelled or materially changed in the scope or amount of coverage unless thirty (30) days advance notice is given to the nonprocuring party; (d) be primary policies - not as contributing with, or in excess of, the coverage that the other party may carry; (e) provide that any loss shall be payable notwithstanding any act or negligence of Landlord or Tenant which might result in a forfeiture thereunder of such insurance or the amount of proceeds payable; (f) have deductibles not greater than $1,000.00 for which Tenant shall be responsible; (g) be permitted to be carried through a "blanket policy" or "umbrella" coverage; and (h) be maintained during the entire Term and any extensions thereof.

F. By the Commencement Date and upon each renewal of its insurance policies, Tenant shall give certificates of insurance to the Landlord. The certificate shall specify amounts, types of coverage, the waiver of subrogation, and the insurance criteria listed in this paragraph. The policies shall be renewed or replaced and maintained by Tenant. If Tenant fails to give the required certificate within thirty (30) days after notice of demand for it or if Landlord determines the required insurance is not maintained by Tenant, the Landlord may obtain and pay for that insurance and be entitled to receive immediate reimbursement from the Tenant.

G. Subject to the terms of this Paragraph 16, and except to the extent caused by the gross negligence or willful misconduct of Landlord or any officer, agent, employee, contractor, servant, invitee or guest of Landlord, the Tenant shall indemnify and hold Landlord harmless from and against any and all claims arising out of (a) Tenant's or any of its subtenants' use or occupancyof the Premises or any part thereof, (b) any activity, work, or other thing done, permitted or suffered by Tenant in or about the Premises, or any part thereof, (c) any breach or default by Tenant in the performance of any of its obligations under this Lease, or (d) any negligence or willful misconduct of Tenant, or any of its subtenants, officers, agents, employees, contractors, servants, invitees or guests; and in each case from and against any and all damages, losses, liabilities, lawsuits, cost and expenses (including attorneys' fees at all tribunal levels) arising in connection with any such claim or claims as described in (a) through (d) above, or any action brought thereon. If such action be brought against Landlord, Tenant upon notice from

Case 6:05-cv-00013-NKM    Document 1-1    Filed 04/29/05    Page 11 of 13    Pageid#: 16

Landlord shall defend the same through counsel selected by Tenant's insurer, or other counsel, which counsel in either case must be acceptable to Landlord. Tenant assumes all risk of damage or loss to its personal property and Furniture (and the personal property and furniture of anyone using and/or occupying any portion of the Premises by, through or under Tenant, including, without limitation, Liberty University students) or injury or death to persons in, on, or about the Premises, from all causes except those for which the law imposes liability on Landlord or which result from defects in the initial construction of the Premises, regardless of any attempted waiver thereof, and Tenant hereby waives such claims in respect thereof against Landlord. The provisions of this paragraph shall survive the termination of this Lease.

Subject to the terms of this Paragraph 16, and except to the extent caused by the negligence or willful misconduct of Tenant or any of its subtenants, officers, agents, employees, contractors, servants, invitees or guests and provided Tenant maintains all insurance required hereunder, Landlord shall indemnify and hold Tenant harmless from and against any and all claims arising out of (a) any activity, work, or other thing done by Landlord in or about the Premises, or any part thereof, (b) any breach or default by Landlord in the performance of any of its obligations under this Lease, or (c) any gross negligence or willful misconduct of Landlord, or any officer, agent, employee, contractor, servant, invitee or guest of Landlord; and in each case from and against any and all damages, losses, liabilities, lawsuits, cost and expenses (including attorneys' fees at all tribunal levels) arising in connection with any such claim or claims as described in (a) through (c) above, or any action brought thereon. If such action be brought against Tenant, Landlord upon notice from Tenant shall defend the same through counsel selected by Landlord's insurer, or other counsel, which counsel in either case must be acceptable to Tenant.

17. **Agent:** Landlord and Tenant acknowledge that Landlord may, from time to time in his discretion, engage a third party ("Agent") to manage and supervise Landlord's obligations under this Lease. Landlord and Tenant hereby agree that: (1) Agent shall have only such authority as provided in the management contract existing between Landlord and Agent; (2) Agent may perform without objection from Tenant, any obligation or exercise any right of Landlord imposed or given herein or by law and such performance shall be valid and binding, if authorized by Landlord, as if performed by Landlord; (3) Tenant shall pay all rentals to the Agent if directed to do so by Landlord; (4) Agent shall not be liable to Tenant for the nonperformance of the obligations or promises of Landlord contained herein; (5) nothing contained herein shall modify the management contract existing between Landlord and Agent; however, Landlord and Agent may from time to time modify the management agreement in any manner which they deem appropriate; and (6) Landlord may, in its discretion and in accordance with any management agreement, remove without replacing or remove and replace any agent engaged to manage, supervise or operate the Premises.

18. **Eminent Domain and Casualties:**

A. If all of the Premises, or a substantial portion as would render the balance of the Premises not suitable for Tenant's then current use, be taken under the power of condemnation or eminent domain (or a conveyance in lieu thereof), then this Lease shall terminate as of the date possession

is taken by the condemning authority, and rent shall be adjusted between Landlord and Tenant as of such date. If only a portion of the Premises are taken and Tenant can continue use of the remainder, then this Lease will not terminate, but rent shall abate in a just and proportionate amount to the loss of use occasioned by the taking and Landlord shall proceed forthwith to cause the Premises to be restored as near as may be practicable to the original condition thereof if there is any loss of use of the Premises. Landlord may, at its option, require Tenant to arrange for and handle the restoration of the Premises, in which case Landlord shall furnish Tenant with sufficient funds for such restoration, at the time or times such funds are needed, utilizing the proceeds of any awards or consideration received as a result of the taking and any additional funds necessary to cover the costs of restoration. Tenant shall have no right or claim to any part of any award made to or received by Landlord for any taking and no right or claim for any alleged value of the unexpired portion of this Lease; provided, however, that Tenant shall not be prevented from making a claim against the condemning authority (but not against Landlord) for any moving expenses, loss of profits, or taking of Tenant's personal property (other than its leasehold estate) to which Tenant may be entitled. In the event of a partial taking and loss of use, the Purchase Price payable by Tenant under its Option to Purchase (as defined in Paragraph 27 hereof) shall be equitably adjusted to reflect the reduced value of the Premises after such taking.

B. If the Premises or any Building shall be partially damaged by fire or other casualty that is an insured loss under applicable insurance policies, and if Landlord's lender(s) shall permit insurance proceeds paid as a result thereof to be so used, then upon Landlord's receipt of the insurance proceeds, Landlord shall, except as otherwise provided herein, promptly repair and restore the same substantially to the condition thereof immediately prior to such damage or destruction; limited, however, to the extent of the insurance proceeds actually received by Landlord. If by reason of such occurrence: (a) the Premises or any Building are damaged in whole or in part as a result of a risk which is not covered by applicable insurance policies; or (b) Landlord's lender does not permit a sufficient amount of the insurance proceeds to be used for restoration purposes; or (c) the Premises or any Building are damaged in whole or in part during the last year of the Term; or (d) the Premises are damaged to an extent of fifty percent (50%) or more of the fair market value thereof, Landlord may elect either to repair the damage as aforesaid within one hundred fifty (150) days after the date of fire or casualty, or to cancel this Lease by written notice of cancellation given to Tenant within thirty (30) days after the date of such occurrence, and thereupon this Lease shall terminate. Tenant shall vacate and surrender the Premises to Landlord within fifteen (15) days after receipt of such notice of termination. In addition, if Landlord does not elect to terminate this Lease, but fails to restore the damaged portions of the Premises or any Building within one hundred fifty (150) days after the date of fire or casualty, Tenant may also terminate this Lease by written notice given to Landlord at any time after the one hundred fiftieth (150th) day and before the one hundred eighth (180th) day following the date of damage. However, if Landlord is prevented by strike, act of God, unavailability of materials, weather, Tenant caused delays or other cause beyond its reasonable control, from completing the restoration, then Landlord shall have an additional period beyond said period, equal to the period Landlord is delayed by causes beyond its reasonable control, in which to restore the damaged areas of the Premises or any Building; and Tenant may not elect to terminate this Lease until said additional period required for completion has expired with the Premises or any Building not having been restored. In such case, Tenant's thirty (30) day notice

Case 6:05-cv-00013-NKM    Document 1-1    Filed 04/29/05    Page 13 of 13    Pageid#: 18